IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

NATIONAL ALLIANCE FOR           )
ACCESSIBILITY, INC., and        )
DENISE PAYNE,                   )
                                )
            Plaintiffs,         )
                                )
        v.                      )            1:11-cv-941
                                )
BIG LOTS STORES, INC., an Ohio  )
Corporation,                    )
                                )
            Defendant.          )

## MEMORANDUM OPINION AND ORDER

THOMAS D. SCHROEDER, District Judge.

Plaintiffs National Alliance for Accessibility, Inc.
("NAA"), and Denise Payne ("Payne") seek declaratory and
injunctive relief against Defendant Big Lots Stores, Inc. ("Big
Lots"), for alleged violations of the Americans with
Disabilities Act of 1990, 42 U.S.C. §§ 12101-12213 (2006 & Supp.
2011) ("ADA"). Before the court is Big Lots's motion to dismiss
Plaintiffs' claims for lack of subject matter jurisdiction and
failure to state a claim, pursuant to Federal Rules of Civil
Procedure 12(b)(1) and 12(b)(6), respectively. (Doc. 11.) For
the reasons set forth below, the court will grant Big Lots's
motion to dismiss on the ground that Plaintiffs lack standing.

## I.   BACKGROUND

Payne, who was born with cerebral palsy and is confined to a wheelchair, characterizes herself as an advocate for disabled individuals. (Doc. 18-1 ¶¶ 5, 7.) From her home state of Florida, Payne and the organization she founded, the NAA, seek to promote equality for disabled individuals through ADA litigation. As of June 2011, Payne and the NAA had filed at least 171 ADA cases, some 32 of them in North Carolina. Nat'l Alliance for Accessibility, Inc. v. Waffle House, Inc. (Waffle House I), No. 5:10-CV-375-FL, 2011 WL 2580679, at *1 (E.D.N.C. June 29, 2011). To date, Plaintiffs have filed 24 ADA lawsuits in the Middle District of North Carolina alone. The present lawsuit is Plaintiffs' fourth in this state against Big Lots in the past year. See Nat'l Alliance for Accessibility, Inc. v. Big Lots Stores, Inc., No. 5:12-cv-0006 (E.D.N.C. Jan. 6, 2012) (Raleigh store); Nat'l Alliance for Accessibility, Inc. v. Big Lots Stores, Inc., No. 5:11-cv-741 (E.D.N.C. Dec. 20, 2011) (Cary store); Nat'l Alliance for Accessibility, Inc. v. Big Lots Stores, Inc., No. 1:11-cv-730 (M.D.N.C. Sept. 13, 2011) (Greensboro store).[1]

---

[1] Plaintiffs have also actively pursued ADA litigation against Big Lots in Florida. Payne has brought at least four cases against Big Lots across that state since November 2011. Nat'l Alliance for Accessibility, Inc. v. Big Lots Stores, Inc., No. 0:12-cv-60243-WPD (S.D. Fla. Feb. 9, 2012) (Hollywood, Fla.); Nat'l Alliance for Accessibility, Inc. v. Big Lots Stores, Inc., No. 9:11-cv-81234-KLR (S.D. Fla. Feb. 2, 2012) (Fort Lauderdale, Fla.); Payne v. Big Lots

2

The present lawsuit arises from an undated visit Payne paid to Big Lots's store located at 2531 Eastchester Drive in High Point, North Carolina (also the "Store"). (Doc. 7 at 2, 5.) For purposes of this motion, the court assumes without deciding that the Store is a place of public accommodation subject to the requirements of Title III of the ADA. See 42 U.S.C. § 12182. Payne claims that Big Lots "discriminated against [her] by denying her access to full and equal enjoyment of the goods, services, facilities, privileges, advantages, and/or accommodations of its place of public accommodation or commercial facility . . . in violation of 42 U.S.C. § 12181 et seq. and 28 C.F.R. [§] 36.302 et seq." (Doc. 7 at 13.) Specifically, Plaintiffs identify eleven alleged ADA violations. Most relate to the accommodations for disabled individuals in the Store's men's restroom and unisex restroom, including the baby changing table.[2] (Id. at 7-8, 11-12.) Three involve Big Lots's provision of access to its goods and services; alleged lack of "proper signage"; and counters "in excess of 36

_____

Stores, Inc., No. 3:11-cv-1122-J-32 TEM (M.D. Fla. Nov. 14, 2011) (Jacksonville, Fla.); Nat'l Alliance for Accessibility, Inc. v. Big Lots Stores, Inc., No. 0:11-cv-62392 (S.D. Fla. Nov. 7, 2011) (West Palm Beach, Fla.).

[2] For example, one alleged violation is that the men's restroom sink does not contain the proper insulation/pipe wrap. (Doc. 7-4 (Exhibit D) at 2.) Another is that the unisex door does not provide the proper hardware. (Doc. 7 at 8.) Yet, the photograph attached to the amended complaint shows that the door bears a sticker noting that the unisex restroom is "Temporarily Out of Order." (Doc. 7-6 (Exhibit F) at 2.)

3

[inches].” (Id. at 11.) And one alleged violation is the lack of “policies and procedures to inform its staff and employees on how to deal with disabled individuals and how to put in place and maintain an ADA compliant facility.” (Id. at 12.) The only allegation relating to the women’s restroom is that its door lacked a required International Symbol of Accessibility sign mounted on the latch side. (Id. at 8; Doc. 7-9 (Exhibit I) at 2.) Beyond her conclusory accusation that she “has been personally injured” (id. at 14), there is no allegation in the complaint that Payne was prevented from using the women’s restroom or that she was otherwise unable to access and shop at the Store. Plaintiffs allege that they would need a full inspection of the Store to “determine all of the applicable areas of non-compliance with the [ADA].” (Doc. 7 at 12.)

In anticipation of a challenge to their standing to sue for the alleged ADA violations at the Store -- perhaps relating to the fact that Plaintiffs have had several of their cases dismissed in North Carolina’s federal courts after an inability to demonstrate standing, see, e.g., Nat’l Alliance for Accessibility, Inc. v. Triad Hospitality Corp., No. 1:11-cv-527, 2012 WL 996661 (M.D.N.C. Mar. 23, 2012); Waffle House I, 2011 WL 2580679 -- Plaintiffs’ amended complaint alleges a number of standing-related facts. Plaintiffs claim, for instance, that Payne is a “frequent shopper” at the High Point Store. (Doc. 7

4

at 5.) They allege that she has visited a friend in High Point three times in the past two years and has, on each occasion, visited the Store. (Id. at 6.) Furthermore, Plaintiffs represent that Payne patronizes Big Lots for their "small candies" and travel-size toiletries and will "definitely" revisit the High Point Store in May 2012. (Id.)

## II. ANALYSIS

Big Lots moves to dismiss Plaintiffs' amended complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Doc. 11.) According to Big Lots, as several other district courts in North Carolina have found, Plaintiffs "fail to sufficiently show that Payne will return to the Store" and therefore are unable to meet the "burden of demonstrating a likelihood of future harm to Payne." (Doc. 12 at 16.) Payne, Big Lots contends, lives over 700 miles from High Point, lacks a record of past patronage to the Store, alleges no definitive plans to return to the Store, and, other than her representation that she visits a friend in High Point one or two times per year, has not demonstrated a consistent pattern of travelling near the area. (Id. at 11-15.) Because Payne lacks standing, Big Lots contends, the NAA, whose status is derivative of Payne's, lacks standing as well. (Id. at 16-17.)

Plaintiffs' amended response brief, spanning some 36 pages, is more of a policy statement extolling the virtues of the ADA

than a legal argument on the merits of this case, particularly at the outset. This is problematic because this court's local rules limit response briefs to 20 pages, and the court will disregard the 16 additional pages that offend the rule. See Local Rule 7.3(d). Still, in the relevant portions of their brief, Plaintiffs argue that Big Lots "has acted unlawfully" and that Payne's repeated visits to the Store establish "a real and immediate threat of repeated injury that is not conjectural or hypothetical." (Doc. 17 at 4, 7.) Plaintiffs also object to the use of the proximity test -- a set of factors for determining standing used by a large number of federal courts, including district courts in the Fourth Circuit, based on considerations such as a plaintiff's distance from the business and her past patronage of the establishment -- for evaluating standing. (Id. at 10-11.) Instead, Plaintiffs urge the court to focus on the fact that Big Lots's alleged non-compliance with the ADA creates an ongoing injury to disabled individuals like Payne. (Id. at 17.)

Federal district courts exercise limited jurisdiction. Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 552 (2005). For a case or controversy to be justiciable in federal court, a plaintiff must allege "'such a personal stake in the outcome of the controversy as to warrant [her] invocation of federal court jurisdiction and to justify exercise of the

6

court's remedial powers on [her] behalf.'" White Tail Park, Inc. v. Stroube, 413 F.3d 451, 458 (4th Cir. 2005) (quoting Planned Parenthood of S.C. v. Rose, 361 F.3d 786, 789 (4th Cir. 2004)). The judicial doctrine of standing is "an integral component of the case or controversy requirement." CGM, LLC v. BellSouth Telecomms., Inc., 664 F.3d 46, 52 (4th Cir. 2011) (citation and internal quotation marks omitted). The party seeking to invoke the federal courts' jurisdiction has the burden of satisfying Article III's standing requirement. Miller v. Brown, 462 F.3d 312, 316 (4th Cir. 2006). To meet that burden, a plaintiff must demonstrate three elements: (1) that she has suffered an injury in fact that is "concrete and particularized" and "actual or imminent"; (2) that the injury is fairly traceable to the challenged conduct; and (3) that a favorable decision is likely to redress the injury. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992).

Where, as here, a plaintiff seeks injunctive relief, the injury in fact element requires a showing of "irreparable injury." City of Los Angeles v. Lyons, 461 U.S. 95, 111 (1983). According to the Supreme Court, "past wrongs do not in themselves amount to that real and immediate threat of injury necessary to make out a case or controversy." Id. at 103. Absent a "sufficient likelihood that [the plaintiff] will again

be wronged in a similar way, [the plaintiff] is no more entitled to an injunction than any other citizen." Id. at 111.

Generally, challenges to standing are addressed under Rule 12(b)(1) for lack of subject matter jurisdiction.[3] CGM, 664 F.3d at 52; see also Pitt Cnty. v. Hotels.com, L.P., 553 F.3d 308, 311 (4th Cir. 2009) (noting that the district court re-characterized a defendant's challenge to standing from a motion to dismiss for failure to state a claim under Rule 12(b)(6) to a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1)). When resolving a motion under Rule 12(b)(1), "'the district court is to regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment.'"[4]

---

[3] Here, Big Lots has moved to dismiss for lack of standing under Rule 12(b)(1) and Rule 12(b)(6). The Fourth Circuit has explained, however, that Rule 12(b)(6) is generally reserved for challenges to statutory -- not constitutional -- standing. CGM, 664 F.3d at 51-52; cf. Daniels v. Arcade, L.P., No. 11-1191, slip op. at 5 n.1 (4th Cir. Apr. 24, 2012) (unpublished) (analyzing standing under Rule 12(b)(6) only because neither party assigned error to the district court's analysis on that basis). Because Big Lots's argument addresses Plaintiffs' lack of constitutional standing under Article III, the court construes its motion solely as one challenging the court's subject matter jurisdiction under Rule 12(b)(1).

[4] It has been said that "[t]he procedural means for resolving standing issues are not as clearly defined as might be imagined." 13B Charles Alan Wright, Arthur R. Miller, and Edward H. Cooper, Federal Practice and Procedure § 3531.15, at 301 (3d ed. 2008). In the Fourth Circuit, where a party moves under Rule 12(b)(1) on the basis that a complaint fails to allege facts supporting the court's subject matter jurisdiction, the plaintiff "is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration." Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). On the other hand, where a party contests the veracity of the jurisdictional

8

Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp., 166
F.3d 642, 647 (4th Cir. 1999) (quoting Richmond, Fredericksburg
& Potomac R.R. Co. v. United States, 945 F.2d 765, 768 (4th Cir.
1991)).  Where, as here, a defendant has not provided evidence
to dispute the veracity of the jurisdictional allegations in the
complaint, the court accepts facts alleged in the complaint as
true just as it would under Rule 12(b)(6).[5]  Kerns v. United
States, 585 F.3d 187, 192-93 (4th Cir. 2009) (citing Adams v.
Bain, 697 F.2d 1213, 1219 (4th Cir. 1982)).  In addition, the
court assumes the truth of the facts augmented by the
plaintiff's affidavits.  Fair Hous. in Huntington Comm., Inc. v.
Town of Huntington, N.Y., 316 F.3d 357, 362 (2d Cir. 2003).
Ultimately, the plaintiff bears the burden of "clearly . . .
alleg[ing] facts demonstrating that [s]he is a proper party to
invoke judicial resolution of the dispute." Warth v. Seldin,
422 U.S. 490, 518 (1975).

---

allegations in the complaint, "[a] trial court may consider evidence
by affidavit" and "weigh[] the evidence to determine its
jurisdiction." Id.  This appears to be consistent with the Fifth
Circuit's approach, which permits district courts to consider "(1) the
complaint alone; (2) the complaint supplemented by the undisputed
facts evidence in the record; or (3) the complaint supplemented by the
undisputed facts plus the court's resolution of disputed facts" when
resolving motions under Rule 12(b)(1).  Lane v. Halliburton, 529 F.3d
548, 557 (5th Cir. 2008) (citation and internal quotation marks
omitted); see also Hostetler v. United States, 97 F. Supp. 2d 691, 694
(E.D. Va. 2000) (applying the same test).

[5]  The court does so even though in Triad Hospitality Corp., 2012 WL
996661, Payne submitted an affidavit to this court in support of her
standing to bring an ADA claim against a hotel in Winston-Salem which
contained representations as to her travel activities that were
demonstrated to be materially incorrect.

## A.   Actual or Imminent Injury

Plaintiffs contend that absent an injunction from this court, they will suffer an irreparable injury because of Big Lots's alleged ongoing violations of the ADA. A disabled individual seeking an injunction under the ADA, however, must, like all litigants in federal court, satisfy the case or controversy requirement of Article III. Chapman v. Pier 1 Imports (U.S.) Inc., 631 F.3d 939, 946 (9th Cir. 2011) (en banc). A plaintiff's "profession of an 'inten[t]' to return to the places [she] ha[s] visited before" is generally insufficient to establish standing to seek injunctive relief. Lujan, 504 U.S. at 564 (first alteration in original). "Such 'some day' intentions -- without any description of concrete plans, or indeed even any specification of when the some day will be -- do not support a finding of the 'actual or imminent' injury" required by Supreme Court precedent interpreting Article III. Id. Thus, to show likely future harm, Payne must demonstrate a sufficiently concrete intention to return to Big Lots's Store in High Point. Norkunas v. Park Road Shopping Ctr., Inc., 777 F. Supp. 2d 998, 1001 (W.D.N.C. 2011) (citing Lujan, 504 U.S. at 564).

For her part, Payne alleges that she is a "frequent shopper at the Big Lots in High Point." (Doc. 7 at 5.) Though she lives in Florida, Payne claims that she "definitely plans to

10

return frequently to the Big Lots store on Eastchester [Drive]."
(Id.)  Specifically, she alleges that she visited a friend in
High Point twice in 2010 and once in 2011 during her visits to
North Carolina.  (Id. at 6.)  "Each time," Payne claims, she
"shopped at Big Lots."  (Id.)  In addition, she represents that
she plans to visit the Store "not only to avail herself of the
goods and services available . . . but to assure herself that
this property is in compliance with the ADA."  (Id. at 10.)  To
that end, the complaint states that Payne "will return to [the
High Point] Big Lots in May 2012."  (Id. at 6.)  An evidentiary
affidavit Payne submitted in support of Plaintiffs' standing
further represents that she would visit the Store by April 18,
2012 and "later in 2012."  (Doc. 18-1 at 2.)

In assessing the plausibility of a plaintiff's claim that
she is likely to return to the site of the discrimination (at
least once the barriers to her return are removed), courts often
find the following factors helpful: "(1) the plaintiff's
proximity to the defendant's place of public accommodation; (2)
the plaintiff's past patronage; (3) the definitiveness of the
plaintiff's plan to return; and (4) the plaintiff's frequency of
nearby travel." Norkunas, 777 F. Supp. 2d at 1002; Access 4
All, Inc. v. Absecon Hospitality Corp., Civ. A. No. 04-6060,
2006 WL 3109966, at *6 (D.N.J. Oct. 30, 2006); see also
Camarillo v. Carrols Corp., 518 F.3d 153, 158 (2d Cir. 2008)

(per curiam) (considering a plaintiff's past patronage of the defendant's establishment and its proximity to her home to be factors in finding standing).  Here, too, the court finds these factors helpful and will consider them, in addition to any other relevant factor raised by the facts.  Each will be addressed in turn.

### 1.  Proximity to Defendant's Business

Courts have found that a plaintiff's proximity to a defendant's place of business is generally probative of the likelihood that the plaintiff will return to the sight of past discrimination and suffer harm.  Camarillo, 518 F.3d at 158; Waffle House I, 2011 WL 2580679, at *2; cf. Daniels v. Arcade, L.P., No. 11-1191, slip op. at 10 (4th Cir. Apr. 24, 2011) (unpublished) (noting that the plaintiff's home near the defendant's business weighed in favor of the plaintiff's standing).  While no per se rule should apply, the further away a plaintiff ordinarily finds herself from a business, the less likely she is to suffer future harm.  Molski v. Kahn Winery, 405 F. Supp. 2d 1160, 1163-64 (C.D. Cal. 2005) ("Where the distance between [a plaintiff's residence and a place of public accommodation] is significant, especially if it is in excess of 100 miles, courts have often held that such a distance weighs against finding a reasonable likelihood of future harm."); Delil

v. El Torito Rests., Inc., No. C 94-3900-CAL, 1997 WL 714866, at *4 (N.D. Cal. June 24, 1997).

Payne claims that she intends to visit the Store when she visits a friend who lives in High Point. (Doc. 7 at 6.) However, Plaintiffs fail to provide any information as to the location of her friend and the distance from her friend's residence to the Store. Payne's home in Broward County, Florida, by contrast, is more than 700 miles from the Store. Given the generic nature of the merchandise Payne claims to be purchasing at Big Lots's stores (small candies and mini-toiletries), her claim that in order to shop at the Store she would travel from her home in Florida (especially when she has proven, by her multiple lawsuits against Big Lots stores in Florida, that there are stores much closer to her in her home state) or deviate from her occasional travels through North Carolina (where she has also sued multiple Big Lots stores located 80 miles or more apart), and her failure to indicate her friend's proximity to the Store, this factor weighs strongly against Payne's standing.

### 2. Plaintiffs' Past Patronage

Courts have found that a plaintiff's past patronage of a defendant's place of business is probative of a likelihood to return. See Kahn Winery, 405 F. Supp. 2d at 1163. However, "'[p]ast exposure to illegal conduct does not in itself show a

present case or controversy regarding injunctive relief . . . if unaccompanied by continuing, present adverse effect.'" Access 4 All, Inc. v. Wintergreen Commercial P'ship, Ltd., No. Civ. A. 3:05-CV-1307-G, 2005 WL 2989307, at *4 (N.D. Tex. Nov. 7, 2005) (alterations in original) (quoting Lyons, 461 U.S. at 102). Accordingly, a plaintiff's single prior visit to a defendant's place of business is insufficient to make it likely that she will face harm there in the future. Kahn Winery, 405 F. Supp. 2d at 1164. And even multiple prior visits to a place of public accommodation are not sufficient to show a likelihood of future harm in the absence of additional allegations. Naiman v. N.Y. Univ., No. 95 CIV. 6469(LMM), 1997 WL 249970, at *5 (S.D.N.Y. May 13, 1997).

Here, Payne represents that she visited a friend in High Point three times in the last two years. (Doc. 7 at 6.) Payne claims that "[e]ach time, [she] shopped at Big Lots." (Id.) Big Lots is correct to point out that this allegation, particularly when read in conjunction with Payne's affidavit claiming only that she "visited" the Store without specifying a number of prior visits (Doc. 18-1 at 1) and her numerous other suits pending against Big Lots stores across the state, may indicate that during her trips to High Point she shopped at some Big Lots stores but not necessarily this Big Lots Store. At this stage in the proceedings, however, the court is obliged to

14

draw the complaint in a light most favorable to Payne and assume that she has visited the Store in High Point on each of her three visits to North Carolina. Of course, three visits in a two-year span hardly make Payne a "frequent shopper at the Big Lots in High Point" (Doc. 7 at 5), but this factor weighs slightly in Plaintiffs' favor.

### 3. Definitiveness of Plans to Return

Courts also consider the definitiveness of a plaintiff's plans to return to the defendant's place of business. <u>Nat'l Alliance for Accessibility, Inc. v. Waffle House, Inc.</u> (<u>Waffle House II</u>), No. 5:10-CV-385-D, 2011 WL 4544017, at *2 (E.D.N.C. Sept. 29, 2011). Although a plaintiff does not need to engage in the "futile gesture" of re-visiting a place of business that is unsafe for disabled individuals, she must still prove that she would visit the business in the imminent future but for those safety barriers. <u>Steger v. Franco, Inc.</u>, 228 F.3d 889, 892-93 (8th Cir. 2000). When assessing the definitiveness of a plaintiff's plans to return, courts have considered booked hotel reservations, <u>see</u> <u>Disabled Patriots of Am., Inc. v. Fu</u>, No. 3:08CV542-RJC-DSC, 2009 WL 1470687, at *3 (W.D.N.C. May 26, 2009), or plane tickets, <u>Lujan</u>, 504 U.S. at 579 (Kennedy, J., concurring) (explaining that a requirement that the plaintiff demonstrate the acquisition of airline tickets or announce a "date certain" to return to the location at the core of their

suit is not trivial because a plaintiff must establish a personal stake in the case's outcome (citing Lyons, 461 U.S. at 101-02)), to be indicative of concrete plans, while vague and self-serving desires to revisit a particular establishment fall short of the definitiveness required to show a likelihood of future harm, Norkunas, 777 F. Supp. 2d at 1002. In any event, a plaintiff's intent to return must exist at the time the complaint is filed. Steger, 228 F.3d at 892 (noting that the relevant facts for standing purposes are those that exist at the time a complaint is filed).

In this case, the amended complaint alleges that Payne will return to the Store in May 2012 when visiting High Point. (Doc. 7 at 6.) Payne's affidavit, however, claims that she is planning to visit High Point within 30 days of March 16, 2012, and sometime "later in 2012" (Doc. 18-1 at 2), while making no mention of a visit in May. Of course any visits that Payne planned subsequent to the filing of this complaint -- other than the trip planned for May 2012 -- are irrelevant to the question of standing since the conditions supporting standing must exist at the time the complaint is filed. See Am. Civil Liberties Union of Nev. v. Lomax, 471 F.3d 1010, 1015 (9th Cir. 2006). Still, these shifting representations, even taken in a light most favorable to Payne, cast doubt on the definitiveness of her plans to return. To be sure, Payne fails to provide any of the

16

indicia of concrete plans to support a finding that she will suffer an actual or imminent injury necessary for standing. See Lujan, 504 U.S. at 564.

Beyond her interest in Big Lots's "small candies" and travel-size toiletries (which are apparently available at each of Big Lots's stores in her region, not to mention at virtually an unlimited number of drug, discount, and convenience stores), Payne has failed to indicate a special interest in this Big Lots Store. In fact, a primary motivation for visiting the High Point Store in the future is to test the Store's compliance with the ADA.[6] (Doc. 7 at 10.) Courts are split over whether a plaintiff can demonstrate a concrete interest in returning to a business based on assessing its compliance with the ADA. Compare Norkunas, 777 F. Supp. 2d at 1005 ("[T]he law makes clear that a Title III plaintiff cannot use her status as a tester to satisfy the standing requirements where she would not have standing otherwise."), and Harris v. Stonecrest Care Auto Ctr., LLC, 472 F. Supp. 2d 1208, 1219-20 (S.D. Cal. 2007)

---

[6] In ADA litigation, a "tester" is an individual who tests a location's compliance with federal disability statutes. Judy v. Pingue, No. 2:08-CV-859, 2009 WL 4261389, at *5 (S.D. Ohio Nov. 25, 2009). That Payne is motivated to test the Store's compliance with the ADA is further underscored by her briefing in which she argues that "[t]he depth of contempt for the law demonstrated by Defendant BIG LOTS, is that it continues to administer its places of public accommodation, its BIG LOTS stores, in violation of the ADA, in spite of being sued 56 times for the same acts of ignoring federal civil rights law to bring equality for the disabled. Still -- BIG LOTS refuses to conform its conduct to the requirements of the law." (Doc. 17 at 5.)

17

("Where [Title III] litigation is the only reason for a plaintiff's visit to a particular local establishment, once litigation is complete it is unlikely such a plaintiff will return to avail himself of the business' goods or services, or to visit the local business for any other reason."), with Absecon Hospitality, 2006 WL 3109966, at *7 ("[T]he motive for a plaintiff to return to a particular place of public accommodation is not a factor typically considered by the Court.").

In this court's view, the better approach is that a plaintiff "'cannot use her status as a tester to satisfy the standing requirements where she would not have standing otherwise.'" Waffle House I, 2011 WL 2580679, at *3 (quoting Norkunas, 2011 WL 1438157, at *6); see also Nat'l Alliance for Accessibility, Inc. v. Rite Aid of N.C., Inc., No. 1:10CV932, 2011 WL 4499294, at *8 (M.D.N.C. Sept. 27, 2011) (Auld, Mag. J.) (same), adopted, No. 1:10CV932 (M.D.N.C. Nov. 7, 2011) (Schroeder, J.). Therefore, Plaintiffs' shifting representations about when Payne will return to the Store and her admitted status as a tester -- in the absence of a specific interest in this particular Big Lots Store or evidence of regular patronage -- cast doubt on the definitiveness of her plans to return.

### 4. Frequency of Nearby Travels

Courts also look to the frequency of a plaintiff's travels to the nearby area. Waffle House II, 2011 WL 4544017, at *2. Payne represents that she "goes to North Carolina to meet with other disabled individuals and organizations" and that her "frequent route" takes her to High Point. (Doc. 7 at 5.) In Plaintiffs' brief, Payne claims that she will be taking three trips along that route "in the coming months" (Doc. 17 at 20), but, as noted previously, only one such trip appeared in the record at the time of this complaint. On this record, Payne's prior sporadic and unidentified trips to High Point -- a place to which she has alleged no business or familial ties -- are weak evidence to establish that her nearby travels will make it likely that she will suffer actual or imminent harm at the Big Lots Store.

Taking the allegations concerning standing as a whole, the court concludes that Payne has failed to make the requisite showing that she is sufficiently likely to suffer an actual or imminent injury. Her residence of some 700 miles from the High Point Store, her shifting and indefinite plans to return to the area and the Store, and her limited number of past trips to High Point render implausible her representation that she faces an actual or imminent threat of future harm despite her claim that she has visited High Point three times in the past two years.

19

The absence of a plausible claim that Payne will suffer an irreparable injury in fact prevents her from having standing to utilize the injunctive power of the federal courts.

### B.  Concrete and Particularized Injury

Payne lacks standing for an additional reason:  she fails to allege a "concrete and particularized injury" sufficient to show that she has suffered -- or will suffer -- an injury in fact.  Article III requires that a plaintiff demonstrate a "concrete or particularized" injury.  Lujan, 504 U.S. at 560. "In order for an injury to be 'concrete and particularized,' it must 'affect the plaintiff in a personal and individual way.'" Silvious v. Coca-Cola Co., Civ. A. No. 3:11-CV-82, 2012 WL 1155214, at *3 (N.D.W. Va. Apr. 5, 2012) (quoting Lujan, 504 U.S. at 560 n.1).

Payne's complaint is a catalog of violations and represents it is "based in part on the preliminary (pre-suit) inspector's report."  (Doc. 7 ¶ 19.)  Much of the harm Payne identifies relates to alleged violations of the ADA that have absolutely no application to her, such as deficiencies in baby changing tables and the men's restroom.[7]  What Plaintiffs fail to do is "explain

---

[7] That Plaintiffs would focus on such alleged deficiencies in this case gives support to the suspicion that they are simply litigants in search of a lawsuit and fee.  See, e.g., Molski v. Mandarin Touch Rest., 347 F. Supp. 2d 860, 863 (C.D. Cal. 2004) (explaining how the quest for attorney's fees has spurred a "cottage industry" of individuals and attorneys who "aggressively seek out any and all violations of the ADA"), aff'd in part, dismissed in part sub nom.

which of these alleged barriers [Payne] encountered and would likely encounter upon return, or how any of them denied [her] and will continue to deny [her] 'full and equal' access" to the Store. See Harty v. Burlington Coat Factory of S.C., LLC, Civ. A. No. 3:11-1138-MBS, 2012 WL 264688, at *3 (Jan. 30, 2012) (denying standing to an ADA plaintiff who failed to allege a concrete or particularized injury). Thus, despite Payne's unsubstantiated and conclusory claim that she "has been personally injured" (Doc. 7 at 13), she has failed to plausibly allege a concrete or particularized injury entitling her to standing to seek injunctive relief.[8]

Payne therefore has failed to establish that she has standing to invoke the protection of the federal courts' injunctive power. Consequently, Big Lots's motion to dismiss

---

Molski v. Evergreen Dynasty Corp., 500 F.3d 1047 (9th Cir. 2007), reh'g denied, 521 F.3d 1215 (9th Cir. 2008) (en banc).

[8] Contrary to Plaintiffs' argument that Daniels is "controlling authority," in this circuit, unpublished cases are not precedential. Collins v. Pond Creek Mining Co., 468 F.3d 213, 219 (4th Cir. 2006) (noting that unpublished decisions have no precedential value and are "entitled only to the weight they generate by the persuasiveness of their reasoning" (quoting Hupman v. Cook, 640 F.2d 497, 501 & n.7 (4th Cir. 1981))). Daniels itself made that point clear. See Daniels, No. 11-1191, slip op. at 2 (cautioning that "[u]npublished opinions are not binding precedent in this circuit"). Daniels does reveal, however, how the facts of the present case fall far short of those presented there. Cf. id. at 10-11 (finding that Daniels demonstrated a concrete and particularized injury to support standing under Rule 12(b)(6) where he lived within 20 miles of the store, "regularly visits" it, and was himself barred entry by "inaccessible entry routes, inaccessible ramps, inaccessible restrooms, and other inaccessible amenities").

pursuant to Rule 12(b)(1) (Doc. 11) will be granted as to Plaintiff Payne.

* * *

Plaintiffs fail to make a separate argument concerning the NAA's basis for standing, but the complaint appears to rely on NAA's status as Payne's frequent litigation partner. Generally, in the absence of a direct injury to an organization, it will only have standing if it can show that (1) at least one of its members would have standing to sue as an individual, (2) the interests at stake in the litigation are germane to the organization's purpose, and (3) neither the claim made nor the relief requested requires the participation of the individual members in the suit. Retail Indus. Leaders Ass'n v. Fielder, 475 F.3d 180, 186 (4th Cir. 2007). Such associational or representative standing is satisfied even where just one of the association's members would have standing. Warth, 422 U.S. at 490.

Here, the only member of the NAA who is identified specifically in the record is Payne. Because she lacks standing to sue in her own right, the NAA has failed the first prong of the associational standing test. Consequently, Big Lots's motion to dismiss pursuant to Rule 12(b)(1) (Doc. 11) will be granted as to Plaintiff NAA.

## III. CONCLUSION

For the reasons set forth above, therefore,

IT IS ORDERED that Defendant Big Lots's motion to dismiss (Doc. 11) is GRANTED.

A separate Judgment will be entered.


                                        /s/   Thomas D. Schroeder
                                   United States District Judge

April 26, 2012